191402 Monica Nolasco-Yok v. William Barr Thank you. Good morning, Your Honor. Today I please the Court. My name is Daniel Welch. I represent the petitioner Monica Nolasco-Yok. May I reserve two minutes for rebuttal? Yes. Petitioner contends that this Court should vacate the order issued by the Board of Immigration Appeals denying Respondent's motion to reconsider her asylum withholding of removal and CAF claims. The lone issue before the Court today is whether the Board of Immigration Appeals abused their discretion when they decided that there was no clear error in the immigration judge's determination that the gang targeted petitioner in order to increase their resources rather than on account of her family membership. And to come to that conclusion, Your Honors, the IJ and the BIA had to turn a blind eye to the evidence presented to them. The petitioner's declaration as well as her testimony stated that she was not persecuted by the gang until after her sister was approached, refused joining the gang, and then was raped by the gang. Counsel, don't you have a problem with the declaration that she submitted arguably supports her assertion that she was being threatened and targeted because of her relationship with her sister and her sister's refusal to join the gang. But then when you get to the hearing itself, perhaps because of failures of counsel, not you, I understand that, that the focus changes and there she seems to testify in a way that supports the conclusion that they were after her because they wanted to increase the membership in the gang. And in response to the motion for reconsideration, the board points that out. I mean, that was the testimony at the hearing. You might wish it were different. You might wish it were more consistent with the declaration. But that's not the way the hearing played out. So aren't you stuck with what she said at the hearing? Absolutely, Your Honor. I think that what happened was the government, or DHS, has cherry-picked statements similar to an emirate of Rodriguez v. Barr, which was just decided by this court. They cherry-picked statements from the hearing where the respondent said that the gangs wanted them to sell drugs, her sister and her. But that was after the sister was persecuted. And the chronological, the way the events occurred, you can see that the motive against Petitioner and the rest of the family was the animus towards the kinship to the sister who refused being part of the gang and then who was subsequently raped by the gang because of that. So yes, her testimony that they also mentioned they wanted her sister to sell drugs, that is in the record, but it's cherry-picked statements. This is a mixed motive case, and that's exactly what Petitioner is arguing. Yes, absolutely, they want resources and wealth, but that's what they always want. The initial reason to go after Petitioner and the family is the resistance by the sister as well as the fact that this family had no parents living in the house. It was a household of teenagers and children. Counsel, in the original determination, clearly there was an acknowledgment, maybe not in explicit terms, that there was a mixed motive possibility, but the fact finder's conclusion was that the evidence did not support the claim that she was being targeted because of kinship, family membership. But there was evidence, given the way she testified, there was evidence to support the conclusion that she was being targeted because they wanted to have somebody else to do their work. So the mixed motive possibility was understood, the nexus ground was rejected, the non-nexus ground was accepted. I mean, what's wrong with that? Well, it's our position that we believe that the IJ never really did a mixed motive analysis. She just made the determination that she believed one testimony, statement and testimony over the other. But what I've described, maybe not by nomenclature, but that sounds like a mixed motive analysis. Yes, I agree with you, Your Honor. I mean, I would also point out that the IJ found the petitioner credible. So under the Real ID Act, she should have taken all of the evidence, the declaration and her testimony as evidence. Like I said, this is a mixed motive case. She testified in the chronological form that they went after her sister first, and then it seemed that because they couldn't recruit her sister, that there was an animus towards the rest of the family. They started to persecute the rest of the family. And so I believe that is a mixed motive and that their initial motive was animus towards kinship. Like I said, this is there because there can be multiple motives to persecute. As long as one central reason for the persecution is on account of the protected ground, asylum is still proper, even if one or more other motives would not be the basis for asylum. Therefore, it is petitioner's contention that the evidence in the case does not lead us to conclude that resources and enrichment were the gang member's sole motive. Rather, it points to multiple motives, one central reason being revenge against the family of her resister. The evidence also established that they targeted petitioner's family because they were a very visible and easy target, as they were a family, like I said, without the care and protection of parents. There was no male figurehead in the household, and the mother ended up disappearing. I beg your pardon? There was no male figurehead in the household? That's what the gang members noted in their threats. There was no adult in the household, right? Are you engaged in some form of gender bias argument here? Well, the gang is. That's the way they feel. I'm just pointing out that that's how the threat was made, was that, look, you don't have a father, and there's no male in the household other than children to protect you, so you should do as we say. Yes, so I believe that the BIA nor the IJ conducted any meaningful mixed motive analysis. Had they done so, it would have given petitioner the rebuttal presumption of a well-founded fear of future persecution, which we believe she already proved at the hearing as she testified, and it's in evidence in the record that her brothers have told her and her sister that the gang is still seeking them. They are still leaving letters, and they are still making threats against their lives. Counsel, excuse me. I mentioned that, again, you were not Counsel Below. Is that correct? That's correct. I was not. The transcript suggests that Counsel Below fell asleep from the hearing. Is that correct? I am not sure. I did not see that. I could follow up with the… No, no. It's there. The IJ says he hears snoring. Counsel's eyes are closed. He says something, and Counsel says, I wasn't sleeping, but that's troubling. Obviously, you did not bring any ineffective assistance to Counsel's claim, right? There was no ineffective assistance. We didn't do the BIA appeals either. Okay. And so… When you say there was no ineffective assistance, you mean no claim? No claim. Excuse me. Yes, Your Honor. All right. Thank you. Okay. Thank you. You've reserved some time. Two minutes. Thank you. May it please the Court, Rachel Browning for the U.S. Attorney General. Because the Board ultimately concluded that the errors Petitioner identified in her motion to reconsider did not affect the legal outcome of her case, that is, they did not overcome the lack of nexus between her fear of persecution and a protected ground, the Board's decision was not arbitrary, irrational, or contrary to law, and the Court therefore should deny the petition for review. As this Court stated in lieu, a motion to reconsider must give the agency a reason to, quote, change its mind. And in this case, the two purported errors identified by the Petitioner, one was a misstatement of the chronology of events regarding when her sister was raped and when she was first threatened by gang members, the other being the standard of the burden of proof applied, which Petitioner doesn't pursue in this, so we consider, the Court should consider that waived. But as to the first, what the Board found was that whether, that this chronology didn't impact the ultimate conclusion, which was that the reason she consistently testified that the reason she was pursued was because they wanted to, wanted her to join them. And when she was first asked, this goes back to page 102 of the administrative record, she says, unless we join them, they're going to kill us, and they raped my sister. So throughout her testimony, the chronology is not clear at all. That doesn't go to her credibility, but it does suggest that that error that she alluded to in her motion to reconsider was insufficient to overcome the actual legal finding of the agency. And you can go through, the government does not cherry pick, you can go through, it's very consistent in the record. Page 102, unless we join them, they're going to kill us. Page 103, they were threatened to kill me unless we joined them. She knew gang members attacked her sister because they were forcing us to join them, and they always would say that unless we joined them, they were going to kill us. It goes on like that, Your Honors. And this Court has stated in numerous decisions that the fact that multiple family members, that members of a single family might collectively face various forms of harm or threat is insufficient to establish that the harm itself was motivated by the specific family membership. In this case, all of the harm was motivated by the gang's desire to have Petitioner and her sister join them. Would you agree that the declaration that she submitted in support of the asylum application does tell a somewhat different story? There, to be sure, it's in summary form, but there she does seem to assert that the focus, first of all, at the time that they were first threatening her sister, she was too young to even be considered for a gang. Isn't that correct? Well, that's not clear from the record, Your Honor, because she didn't really, she didn't know the age of her own sister, and she didn't remember the first time she herself was threatened, so it's not clear about the age of the sister. But in the declaration, it's not, the suggestion is that they did not focus on her until it was clear that the sister was not going to join, she was abused, and then later in time, they began to focus on her, she would say, as part of the continuing retaliation because of the way her sister had conducted herself. That is the story in the declaration, and the BIA just sort of disregards that earlier declaration. Isn't that true? They don't even factor that into the decision. Is that appropriate? Well, the BIA, again, in the motion to reconsider, was going off of what was found by the IJ and the Board in the previous, those decisions really are before the court, because there was no Petitioner review of that. And to the extent that her, I mean, I would agree that the early declarations were a little bit more, I guess, focused, but again, when she got before the immigration judge, she was asked point blank, were you targeted for recruitment, is there any other reason, and she said no. She never once stated they came after me because of my sister, and again, you know, the sister was recruited, or was targeted again for recruitment, so the fact that there was, you know, males or adults in the household, I think really just goes to making them more vulnerable to being recruited because the gang members felt like, well, there's nobody to stop us. But that doesn't say anything specific about the family itself, which is what you need in order to establish a nexus between a family as a particular social group. So this is not a mixed motive case. This is distinguishable from an emerato because in that case, there was direct testimony, specific testimony that the Petitioner, I believe his grandparents had both emotionally and physically abused him, directly making statements about his mother, and the board sort of, you know, according to the court, discounted that and only focused on the non-protective reasons, and so it was remanded for the board to reconsider that. In this case, there was simply no direct evidence other than her belief or speculation that the gangs targeted her because of her sister, but again, this, you know, her speculation was just not borne out by the testimony. She didn't know who her attackers were. She didn't know her sister's attackers. She never had face-to-face confrontation with these men, so there's really just, it's just a too tenuous connection to bring between their threats and her specific family membership. So if there are no further questions. All right, thank you. Thank you. Thank you, Your Honor. I would just like to point out that the BIA in the motion to reconsider, in their denial of the motion to reconsider, they construed the facts as the respondent described them. They made no issue with the chronology of the facts, as counsel indicated. So there's no, it is clear the chronology is as the petitioner stated because that's what the BIA relied upon. Furthermore, there was no waiver of issues here. The petitioner, the BIA adopted the IJ's findings and conclusions, so the IJ's findings became the BIA's findings and conclusions. And all of the decisions relied upon one thing, that there was no nexus to a protected ground, and that's what we've been arguing all along, is that there is a nexus. Thank you. Thank you.